According to Flora Kernea against the Secretary of Veterans Affairs, Mr. Foster. May it please the Court. Ms. Kernea approached the VA more than 40 years ago, informing them after her husband's death that her husband should have been entitled to 100% service connection for his disabilities for the whole 8 years. This statement made back in 1969 was more than 20 years even before the statute permitting enhanced DIC was passed. So the claim here though was filed in 2005, right? Your Honor, it was filed in 2003. 2003. Yes, Your Honor. Okay, so at the time it was filed in 2003, you had the benefit of NOVA 2, right? The hard decision on NOVA 2. Yes, Your Honor. At that point NOVA 2 had come out, but there had not been a final regulation promulgated yet governing enhanced DIC. At that point the VA had merely inserted 1311 to 37 CFR 2011-06. And the Court found that was deficient and made the VA go back to the drawing board for yet another time to try to make the interpretation entitled to receive consistent with 1318. Well, the claim involved here is not a new material evidence claim, right? It's a hypothetical claim. It's a so-called new claim. Yes, Your Honor. Okay, so what is it in NOVA 2 that led you to think that a new hypothetical claim could lead to recovery? Well, at that point, Your Honor, the regulation still in force was 37 CFR 2011-06 which said there be no consideration of any prior disposition during the veteran's lifetime. I'm not sure that that's true. I mean, what we said was in NOVA 2, we said explicitly that the hypothetical claim can be eliminated, right? Your Honor, that's true with respect to 1318, but again— No, no, with respect to 1311. We said it specifically, right? Your Honor, I disagree. I think they still made the VA go back and figure out under what conditions— We went back and we told the VA that they had to rewrite the regulation to make it clear. But at the same time, we held explicitly that there was no reason that they had to allow hypothetical claims. All they had to do was clarify the regulation to say that. But again, Your Honor, there was no regulation in force at the time that would contradict that she could still apply for hypothetical entitlement. 11-06 was still the law at the time. No, but the problem is this, that when she filed her claim in 2005, she had the benefit of the NOVA 2 decision. The question was at that point, could she reasonably expect that she would be able to assert a hypothetical claim? And what I'm suggesting to you is that NOVA 2 made quite clear that while the language of the regulation had to be fixed, that the VA could properly reject hypothetical claims, right? No, Your Honor. Ms. Kearney actually filed her claim in 2003. If she did file it later— But that's when NOVA—but she filed the claim after NOVA 2 was decided. Yes, Your Honor. Okay. Well, how would you construe fairly what NOVA 2 said with respect to the expectation? Well, again, Your Honor, NOVA 2 provided no guidance in terms of under what conditions that she would be able to reopen her claim. Ms. Kearney is slightly different in that she was already a recipient of DIC. She wasn't asking to be entitled to DIC. She had been receiving the benefit since 1969. This is only about Section 1311, Enhanced DIC. Right. So what would one have taken away from NOVA 2 with respect to the status of 1311? Well, Your Honor, that the VA was going to go back to the drawing board and determine under what conditions that the claimant would be able to reopen a claim or have their claim in the past considered. At the time, it wasn't clear that it was going to be limited to situations of clear and unshakeable error and service medical records. It wasn't clear about that. It wasn't clear that new and material evidence claims might not be brought. But the decision seems to be quite clear that these new claims, the hypothetical claim, could not have been brought. If you look at 1378, page 1378 of the NOVA 2 decision, we say there's a question of whether the Department could properly construe the language of the two sections to bar the filing of new claims. We hold that it could, and the Department has adequately explained that decision, although its decision is not a model of clarity. We said explicitly that new claims can be barred. Yes, Your Honor, and also new claims were barred. At the time, I think the key word is could. I don't think it was resolved at that point, and the law in effect at the time was still Hicks v. Gober, where people were allowed, and that was consistent with the regulatory scheme in effect at the time that Ms. Kearney filed her claim. Well, no, we said that Hicks v. Gober didn't prevent them from changing the regulation, and we said that they made a decision to eliminate hypothetical claims, and that that decision was sustainable and there wasn't anything wrong with it, and we just said we've got to change the regulation so that the result that you want to achieve is clear from the language. Why does that decision saying you've got to clear up the regulations to do what you want to do give her an expectation that she should be able to recover on a hypothetical claim? Well, again, going back to the law in effect at the time, in fact, the law has been in effect ever since enhanced DIC was enacted in 1992, was that hypothetical entitlement was permitted. There was the, again, the board's rules of practice. Yes, yes, but NOVA II made clear that the regulation could be changed and was going to be changed, and we ordered it to be changed, right? So how could that lead to expectations on her part that she was going to be able to recover on a hypothetical claim? Your Honor, at that point, we didn't know the scope of how it was going to be changed. Yes, there's many changes in the regulation, but there weren't. Yes, you did, because we said you want to change it to eliminate hypothetical claims, and you can do that. The only question that remained after NOVA II was whether new and material evidence claims were going to be treated the same way as Q claims or not. But as you see in the record here, there are some evidence that new material evidence would also be used in a hypothetical entitlement claim. But here, we don't even get to that point, right? At the time, Ms. Kearney still had an expectation that the long-standing law affirmed in Higs v. Gover was that she was able to apply for a hypothetical entitlement of benefits, and that had not yet been disturbed. It wasn't finalized until promulgation of the final regulation, and this Court's decision in NOVA III where that type of interpretation was permitted. Can I ask a factor two of the Princess Cruz case? We're looking for what she would have done differently at the time, had she known, right? Yes, Your Honor. What time frame do we look at then, what she would have done differently? Are we looking back in the 60s here, because that's when the events leading up to this occurred? So are we looking back to what she would have done differently if she had known this in the 1960s, or what period are we looking at? Again, Your Honor, going back to the past events, we acknowledge that there was no enhanced DIC benefit in the 1960s. It wasn't until 1992, and we understand the similarities as far as what could the claimant have done differently if they knew about the changes. That part is similar to that Rodriguez case. But at the same time, if we look at the Tarver decision, the Court suggested because the law in effect at the time permitted that type of claim, that that actual factor benefited the claimant. In Tarver, though, the Court ultimately went the other way because the other factors were so against the claimant, in that there was a long-settled interpretation of Section 1318 based on the VA General Counsel letter in 1990, and, of course, the regulatory scheme under 1106 that actually specifically excluded claims under Section 1318. Again, going back to my initial point, we believe the Veterans Court committed an error when they just merely cut and paste the analysis from the Rodriguez case. In doing so, the VA continues to maintain that there was no difference in the interpretation between the entitled to receive language in Section 1311 and in Section 1318, and nothing could be farther from the truth. It was well-established, again, that the regulation in effect did not allow consideration of any prior dispositions during the veteran's lifetime. Also, as shown by Hickson... It wasn't well-established because we said in Nova II that the VA doesn't want to have hypothetical claims and it doesn't have to have hypothetical claims. How could she have a settled expectation when we said that? Indeed, we were so confident of the way the VA was going to come out, we lifted the stay to allow the processing of such claims because the law had been settled as to those. Well, Your Honor, one thing it does say in Nova II is the petitioners kept trying to argue there was some sort of collateral estoppel and this court told the petitioners to start arguing that. At the same time, this court also told the VA to stop arguing that somehow the change to the regulation wasn't a substantive change in law, that, in fact, there was a claim that could claim hypothetical entitlement for enhanced DIC. So the court did recognize that the change or the attempt to change the regulations was a substantive change in law. Where did it say that you could recover on a hypothetical claim? Well, specifically what it said was that the government was foreclosed from arguing that there wasn't a change in the law by changing the regulation. It was on page 1378, I believe. Okay. And again, going back, there was well-established law that, in fact, there was that claimants could claim hypothetical entitlement and that the change in the regulation was, in fact, a substantive change. Well, established by whom? Your Honor, in this court, they established Hicks v. Gobert that you could claim hypothetical entitlement and then when they went to the Nova line of cases, there were three cases because there was a difference in interpretation. This court recognized that the VA had interpreted the entitlement receipt language differently in 1311 and 1318 and asked the VA to harmonize its interpretation. The way the VA decided to go was to forbid any claims of hypothetical entitlement from Section 1311 and Section 1318. But as the court recognized in Nova II, this was a substantive change in law. This was a change in the rights of claimants. And Ms. Kearney, who had filed her claim before the regulatory scheme was finished, was entitled to the benefit of the well-settled law that had been in effect since 1992 since the enactment of Enhanced DIC. In fact, if you look at the total record, Your Honor, going to the, I'll jump to the third Princess Cruz's factor, settled expectations, if you look, when the VA lost the Green decision with respect to Section 1318, the VA took immediate action in looking to change the regulatory scheme governing Section 1318 to make sure that hypothetical entitlement was not permitted under that statute. It did no such thing to try to upset the Hicks v. Gober decision. It wasn't until this court notified the VA that its interpretations of the two statutes was inconsistent with the same language, and that was autism preferred, that the VA tried to change the regulation. And in doing so, they first inserted Section 1311A-2 into 38 CFR. What is the result of that? The whole question, at a minimum, was up in the air, right? And that's our point, Your Honor, that it was up in the air as a number two. What are the expectations when something's unresolved? Your Honor, I disagree. It was resolved for the previous 11 years. Hypothetical entitlement was permitted under the law. It wasn't until ANOVA-2. When she filed, it was unresolved. Even looking at the best case for you, it was unresolved whether a hypothetical claim would be allowed. But at that point, too, Your Honor, the claim would be entitled to the benefit-of-the-doubt rule. At that point, there wasn't a Rodriguez-type decision that would prevent entitlement to the benefit-of-the-doubt rule. And because of that, she would get the benefit of the more favorable regulation, especially when the law, at that point, is unsettled. Okay, Your Honor. Let's hear from the Secretary, Mr. Sargent. Ms. Kidmiller. May it please the Court. Ms. Kearney filed her claim for enhanced DIC five months after this Court's decision in ANOVA-2. And it was obvious what was going to happen to her claim at the time. This Court had found five months earlier that VA's interpretation of the enhanced DIC statute, 1311, as prohibiting hypothetical entitlement claims like Ms. Kearney's was permissible and reasonable. At the end of the Court's ANOVA-2 decision, it lifted the stay on such claims and said that the Department could continue to process claims for survivor benefits that would be rejected because they are based on the filing of new claims. Since we have found that the Department's interpretation was permissible and reasonable. Now, the Court did say also that it assumed that view would be reflected in a new regulation under 1311. So it was objectively unreasonable for Ms. Kearney to assume that her hypothetical entitlement claim could be and would be allowed by the VA. I'm a little unclear on your certitude at that point. I mean, HIPPS was decided in 2000, and HIPPS said that a hypothetical entitlement claim was allowed, right? Yes. And the version of the regulation that we're talking about that said the opposite with certitude didn't come until 2007 or 2008? Am I wrong about that? 310F3. Well, first, in 2002, VA amended 20.1106 to say that it previously just mentioned non-service-connected claims under 1318. VA added a reference to... Yeah, but in NOVA 2, if we want to sort of fast-forward to 2003, our Court says, what you've done is a mess, right? And it's not going to work out the way you want. So in the absence of VA having accomplished what it may well have been trying to do, why can't we still fall back on HIPPS? HIPPS was the law. It was the law in 2000, and it was the law in 2003, was it not? Respectfully, Your Honor, I think NOVA 2 eclipsed HIPPS by saying because NOVA 2 found that VA's interpretation of 13.11 as prohibiting hypothetical entitlement claims was permissible and was reasonable. And although the Court recognized that the regulations in implementing that view still needed to be resolved, the Court said that it assumed that VA would promulgate a regulation that could pass muster with this Court. So as of NOVA 2... 2003 rather than a few months later, then you wouldn't be able to come here making the argument that the law was not settled in your favor, right? I mean, you're hanging your head on NOVA 2, which is the same year within months when she filed the claim. NOVA 2 certainly makes things much more clear and stronger. I don't believe we'd say that the law was completely in her favor. Things were still somewhat unsettled prior to HIPPS. You thought HIPPS was wrong when it was decided, and I presume your view didn't change afterwards. But that was the settled law when we issued our opinion, and it was reversed by the Supreme Court. Was it not? It was not. But it was based on the language of the regulation at the time of HIPPS, which was changed shortly thereafter, right? That's right, Your Honor. Shortly after HIPPS, VA made its first attempt to amend its various regulations to better reflect its interpretation. To bar hypothetical claims. Pardon me? To bar hypothetical claims. Yes, Your Honor. Yes, Your Honor. So as of the time of her claim, it was obvious what was going to happen, that hypothetical entitlement would not be allowed. Turning to the second Princess Cruz's factor, Ms. Kearney asserts that this court held in Tarver that that second factor went in favor of the claimant. However, this court did not so hold. This court, in discussing Tarver, explains that concerns about retroactivity are at their nadir, at their minimum, when the change in law, as here, is limited to collateral review of a prior adjudication. Drawing a distinction between a direct claim and this kind of situation, where you have a decision from here, the 1960s, and the claimant is attempting to prove that either something was wrong with that decision or bring a whole new claim, in effect challenging that earlier decision. Do you think that factor trumps all others? No, Your Honor. And in any event, that factor does not weigh in Ms. Kearney's favor. Just as with Ms. Tarver. No, but if we agree with you, I mean, is that enough? Does that factor trump everything else? Well, I don't believe this court has so held on how the factors work. In the previous cases that are most similar, both the first, well, all three factors, were not in favor of the claimant. So I don't think that that is a settled question. If the second factor alone is in the claimant's favor, is that enough to essentially stop the analysis and make the decision right there? But it's clear, as it was in Tarver, that there is nothing that Ms. Kearney could have done or that her husband could have done in the 1960s that would have affected her eligibility for benefits in light of these changes in law. This court in Tarver explained there's a difference between the operation of a new rule as to primary conduct. So, for example, in Princess Cruises, the cruise line failed to collect certain information from passengers as they embarked and disembarked the cruise ship. And when a later evidentiary change in law required the cruise ship then to have that information, it couldn't produce it. It affected its primary conduct. There's a difference, this court explained in Tarver, between that kind of conduct and the kind of conduct that's secondary, simply pursuing your claim. It also says that secondary conduct can bear on retroactivity. But Tarver says you've got to show what you would have done differently in framing your claim when you filed it. In other words, that this would have affected secondary activity. Yes, Your Honor. The secondary activity is not completely irrelevant. But just like Ms. Tarver and before her husband Regan... You've got to show that she would have done something different. Exactly, and Ms. Kearney hasn't made that finding here. Now, in addition, to prevail in her claim, Ms. Kearney has to show that because the only way that she can receive the benefits that she seeks is through a claim of clear and unmistakable error, or Q. So to prevail in her claim, she has to show also that she raised a claim of Q below. And the board made a factual finding, which the Veterans Court affirmed, that she did not raise a Q claim. And that finding is beyond this court's jurisdiction to review. So this court should affirm the Veterans Court decision on that basis as well. Now, Ms. Kearney can still in the future file a Q claim, assuming that she so wishes to do that, to enhance, get an extra monthly amount of the compensation that she has been receiving since 1969. And for these reasons, we ask that the court affirm the decision of the Veterans Court below. Thank you. Thank you, Ms. Kinner. Can I just ask you a quick question before you get into the rebuttal, which is that we didn't ask you about the Q.K. You didn't, after the government made its argument here that we don't have jurisdiction over that, I don't recall that in Gray you responded or tried to contradict that. So is that kind of a concession on your part? No, Your Honor. We still maintain that the government failed to fulfill its duty under Andrews to read Pro Se pleading sympathetically. There's no factual findings underlying that the court has jurisdiction to decide whether or not the veteran has formulated a claim. We do not concede that point. Again, if you look at the long history here, Ms. Kearney, going back as far as 1969, talked about the whole eight years her husband in 1965 brought up the 1961's rating decision. And then again, when she filed for her claim of enhanced DIC, she again brings up my husband was entitled for the whole eight years. We believe under a sympathetic reading that that would justify, that that's the specificity required for a claim of Q. But going back to the Nova II case, as far as what is settled, again, nothing was settled yet as of that case. If you look, one of the concerns was that the regulation would allow people who had never even claimed benefits to all of a sudden come in under the regulation and apply for benefits. And they were worried about adjudicating these types of claims 20 years after the veteran's death. There's been no claim for DIC. All of a sudden they could bring these sort of claims. That's not a consideration for Ms. Kearney. She was already a recipient of DIC and one of the purposes behind the statute was to provide for widows who already have been dependent on veteran's compensation or DIC. So at that point, it was unclear how it would be effective with respect to her. Well, you agreed earlier that her view of the regulation didn't affect primary conduct. The primary conduct occurred in the 60s. You point out correctly that Tarver says that secondary conduct may also be relevant. How did the regulation or the state of the law affect her secondary conduct? What would she have done differently? Well, again, she pursued her claim. That is the only thing she could have done differently given the timing of things. Not pursued the claim. Right. At this point, and again... That's enough? No, but we think the other factors as far as how the laws change weigh heavily in Ms. Kearney's favor. The second factor in Princess Cruz doesn't help her. Well, Your Honor, we think she should be neutral or secondary to the other factors. In veterans' claims... That's the second factor in Princess Cruz's health. No, Your Honor, we think at best it's neutral. At best, we think it's neutral. But I will note that the VA... I see my time is up, but I will note that the VA indicated even when Ms. Kearney filed her claim that they were going to consider her claim for hypothetical entitlement when they received it. So at that time, even the VA was issuing notices that it was going to consider claims of hypothetical entitlement. Okay, thank you, Mr. Foster and Mr. Miller. The case is taken under submission.